UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHAO XIA "RENEE" ZHANG, KIRKPATRICK and M&E INT'L, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 13 cv 2023 |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| LAYER SAVER LLC, an Illinois limited, liability company, CHARLES G. KIOLBASA, JR., STEVE PIERSON and SELDEN FOX, LTD., | ) ) ) ) ) | |
| Defendants. | ) | |

## Order

Defendants Steve Pierson and Selden Fox, Ltd. have filed a motion for summary judgment on plaintiff's claims for securities fraud, Count IV, and common law fraud, Count V. We grant defendants' motion with respect to Count IV for securities fraud [dkt. 37]. We also grant the parties an opportunity to file simultaneous briefs explaining the basis for the exercise of federal jurisdiction over the remaining claims in this case, and to generally address the subject of continued federal jurisdiction. The parties' briefs on the question of jurisdiction are due on or before April 10, 2015. Should the parties confer and determine that they agree to supplemental jurisdiction by this Court, the parties may instead submit a joint letter to the Court indicating their agreed position. The remainder of defendants' motion for summary judgment is denied without prejudice, with leave to reinstate should the jurisdictional question be resolved in favor of this Court retaining supplemental jurisdiction.

## Statement

This lawsuit arises from plaintiff, Renee Zhang-Kirkpatrick's, $150,000 investment in defendant Layer Saver LLC. When plaintiff did not get paid back, she filed suit against Layer Saver LLC, Charles Kiolbasa, Jr., Steve Pierson, and Selden Fox, Ltd., alleging six counts of securities fraud, common law fraud, breach of contract, and requesting injunctive relief. Both parties have filed motions for summary judgment. Here, we will address defendants' motion for summary judgment on the claims for securities fraud - Count IV - and common law fraud -

1

Count V - against both Selden Fox and Pierson.

As further outlined below, we find the Promissory Note documenting the parties' agreement does not fall within the definition of a "security" under the Securities and Exchange Act of 1934.[1] Plaintiff's claim under Count IV for securities fraud, therefore, cannot stand. This presents an issue of supplemental jurisdiction over plaintiff's remaining state law claims that we believe deserves mention by the parties. We, therefore, request additional briefing on the issue of pendent jurisdiction of plaintiff's remaining claims before moving to defendants' motion as to Count V.

I. **Background**

For purposes of this motion, we consider the facts in the light most favorable to plaintiff, as the non-moving party.[2] Plaintiff has owned and operated two businesses, a Chinese restaurant in Wheaton, Illinois, which is now closed, and her current scrap metal brokerage business.[3] Her friend of many years, defendant Pierson, is a Certified Public Accountant and a Shareholder of the defendant accounting firm Seldon Fox.[4] Plaintiff met him nearly 16 years ago at a networking event and since that time she has sought him out for professional advice and assistance on several occasions, including potential investment opportunities.[5]

In 2011, Layer Saver engaged Selden Fox to perform certain accounting services.[6] That is when Pierson first got to know Kiolbasa, Layer Saver's manager.[7] Layer Saver started in 2006 and manufactures, markets, and sells shipping frames used in transport and storage.[8] It is a Limited Liability Corporation with three other members (in addition to Kiolbasa), Kiolbasa's

---

[1] *See* 15 U.S.C. §78j(b).
[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[3] Pl's Resp. to Defs.'s Statement of Material Facts, ¶1 (hereinafter Pl's Resp. SOF), dkt. 42.
[4] Pl's Resp. SOF, ¶3.
[5] *Id.* at ¶11.
[6] *Id.* at ¶13.
[7] *Id.* at ¶¶6, 13.
[8] Kiolbasa Dep. Tr. 12-13, Defs.' Statement of Material Facts (hereinafter Defs.' SOF), exh. 4, dkt. 39.

wife's entity, SH Partners, Todd Jensen, and a "B member" named Mike Gilroy.[9] Mr. Jensen and Kiolbasa's wife's company both have ownership interest in Layer Saver, each with 47 and half percent, and Mr. Gilroy owns a 5 percent interest.[10] Over the years Mr. Jensen has invested approximately 1.4 million into the company and SH Partners nearly 638,000 dollars.[11] Though the company has operated in the negative, it has received loans from Mr. Jensen to continue to finance the business (as he was considered the "funding source").[12]

In September 2011 Mr. Jensen had lost significant money in another investment and was unable to contribute funds to Layer Saver.[13] At this time, Kiolbasa indicated to Pierson that there may be some tax ramifications relating Mr. Jensen, and he mentioned the company's funding problems to Pierson.[14] Pierson then told Kiolbasa about plaintiff, and that she had a "connection to the steel industry," and may be able to help.[15] Pierson later told plaintiff about Layer Saver as a potential investment opportunity, and mentioned that Layer Saver was a new client who was starting a business and perhaps she should look into it.[16] He also noted that Kiolbasa had been a "long time client with the firm in the past."[17]

Plaintiff was interested, and first met with Pierson about Layer Saver in December 2011.[18] At this meeting Pierson showed her a spreadsheet detailing Layer Saver's potential future sales with two large companies, Heinz and Tropicana, told her the loan amount would be $150,000 with an interest rate of 15% per year, and indicated that it was a great investment

---

[9] Kiolbasa Dep. Tr. 6, Defs' SOF, exh. 4, dkt. 39.
[10] *Id.* at 6-8.
[11] *Id.* at 8-9.
[12] *Id.* at 10.
[13] *Id.*
[14] *Id.* at 41 (responding in the affirmative when asked if it was necessary to seek alternative sources of financing and testifying that it was at this time that he spoke with Pierson about it).
[15] *Id.* at 41-42.
[16] Pierson Dep. Tr. 108, Defs' SOF, exh. 6, dkt. 39.
[17] *Id.* at 108.
[18] Pl's Affidavit, ¶7, Pl's Resp. SOF, exh. A.

opportunity.[19] The next meeting took place at the offices of Selden Fox with plaintiff, Pierson and Kiolbasa, as well as John Stuckey, Pierson's partner at Selden Fox.[20] According to plaintiff, the same spreadsheet was again shown to her and both Pierson and his partner told her that because of these purchase contracts Layer Saver had with Heinz and Tropicana, the company would be able to repay her loan amount.[21] At the time, plaintiff did not know who had prepared the spreadsheet or that it was merely sales projections for Layer Saver.[22]

Throughout this time Pierson expressed his enthusiasm about Layer Saver and its product.[23] After approximately four meetings,[24] plaintiff ultimately decided to loan the $150,000 to Layer Saver, but requested some protection built into the note. Either Pierson or Kiolbasa presented plaintiff with the idea of securing the note with Kiolbasa's intellectual property, to which plaintiff agreed.[25] On January 3, 2012, Layer Saver, through Kiolbasa, executed the Promissory Note with a maturity date of July 15, 2012, and the note was secured with Kiolbasa's intellectual property.[26] Layer Saver paid plaintiff the accrued interest under the note for January, February, March and April 2012, but failed to make any additional interest or other payments on the note thereafter.[27]

**I.  Argument**

Defendants argue that the claims against both Selden Fox and Pierson for securities fraud, Count IV, and common law fraud, Count V, cannot survive summary judgment for three principle reasons: the note was not a "security" as defined by the Securities Act, there was no

---

[19] Pl's Affidavit, ¶9, Pl's Resp. SOF, exh. A; Kiolbasa Dep. Tr. 47, Defs' SOF, exh. 4, dkt. 39.
[20] Pl's Affidavit, ¶12, Pl's Resp. SOF, exh. A.
[21] *Id.* at ¶13.
[22] Pl's Dep. Tr., 45-46, Defs' SOF, exh. 4, dkt. 39; *see also* Pl's Resp. Defs' SOF, ¶18.
[23] Defs' SOF, ¶19.
[24] Pl's Resp. Defs' SOF, ¶18.
[25] *Id.* at ¶20.
[26] Defs' SOF, ¶24.
[27] Pl's Resp. SOF, ¶26.

fiduciary relationship between defendants and plaintiff, and the alleged misrepresentations were only opinions with no evidence Pierson intentionally misrepresented information to plaintiff.

Defendants have the burden of showing the absence of a genuine issue of material fact.[28] Defendants need not show that a fact necessary to plaintiff's case is not true, only that plaintiff has failed to present sufficient evidence that the fact is indeed true.[29] In deciding a motion for summary judgment, courts are not to determine the truth of the matter or evaluate the weight of the evidence but, rather, must determine whether a genuine issue of triable fact exists.[30]

### A. The Note

We first address whether the note is a "security" within the meaning of the Securities and Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5. Section 3(a)(1) of the Act defines a security as:

> any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."[31]

The Supreme Court has found that the definition is sufficiently broad and general "to encompass

---

[28] *Pommier v. Peoples Bank Marycrest,* 697 F.2d 1115, 1118 (7th Cir. 1992).
[29] *Pommier,* 697 F.2d at 1118 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).
[30] *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir.2008).
[31] 15 U.S.C. § 78c(a)(10).

5

virtually any instrument that might be sold as an investment."[32] At the same time, Congress did not "'intend to provide a broad federal remedy for all fraud.'"[33] Courts are therefore tasked with deciding which financial transactions come within the statute, and are to emphasize the economic reality of the situation, and not focus on "legal formalisms."[34]

Resolving a circuit split on the issue of whether a "note" is a security under the Securities Act, in *Reves v. Ernst & Young,* the Court adopted the "family resemblance" test.[35] Under this test a note is first presumed to be a "security," but that presumption may be rebutted by a showing that the note bears a strong resemblance – according to four specific factors – to "one of the enumerated categories of instrument."[36] The Court identified those categories, or a list of notes that are *not* securities, as follows: notes delivered in consumer financing, notes secured by a mortgage on a home, notes secured by a lien on a small business or some of its assets, notes relating to a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivables, notes which formalize an open-account indebtedness incurred in the ordinary course of business, and notes given in connection with loans by a commercial bank to a business for current operations.[37]

Here, defendants argue that the note falls squarely into one of these categories on its face; it is a short-term note secured by a lien on a small business or some of its assets. Specifically, defendants argue the parties called the note a short-term "bridge loan,"[38] it was secured by intellectual property, and had a duration of just over six months.[39] Further, the note itself indicated that it was "a business loan that comes within the purview of Section 205/4, paragraph

---

[32] *Reves v. Ernst & Young,* 494 U.S. 56, 61, 110 S.Ct. 945, 949 (1990).
[33] *Id (quoting Marine Bank v. Weaver,* 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982)).
[34] *Id.*
[35] 494 U.S. 56, 61, 110 S.Ct. 945, 949 (1990).
[36] *Reves,* 494 U.S. at 67.
[37] *Id* at 65.
[38] Pl's Resp. SOF, ¶17.
[39] Defs' SOF, ¶24.

6

(1)(c) of Chapter 815 of the Illinois Compiled Statues, as amended."[40]

Yet plaintiff argues that unlike a bank or commercial lender, she did not take liens on the assets of Layer Saver. But plaintiff makes no attempt to explain why the note being secured "by a pledge on the intellectual property for a shipping system" owned by Kiolbasa, "the principal of Layer Saver, LLC,"[41] should not be akin to a lien on the assets of Layer Saver. Indeed, plaintiff claims in her motion for summary judgment that Layer Saver and Kiolbasa continue to use the Patent Rights and sell shipping frames embodying the Patent Rights.[42] In her own view, then, the note secures rights to assets of the business.

Regardless, to determine whether the note is in fact a "security" we turn to the Supreme Court's test articulated in *Reves,* which is designed to aid courts in discerning "notes issued in an investment context (which are 'securities') from notes issued in a commercial or consumer context (which are not)."[43] We look to whether the note bears a "family resemblance" to one of the enumerated categories by applying four factors: (1) the motivations that would prompt a reasonable buyer and seller to enter into the transaction in question; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether the existence of an alternate regulatory scheme significantly reduces the risk of the instrument.[44] Because the factors are considered as a whole, a failure to satisfy one factor is not dispositive.[45]

Before moving to the test, we pause for a moment to address an issue not mentioned by the parties: whether this issue is to be determined as a matter of law, or if the question of whether an instrument is a security may appropriately be submitted to a jury. The Seventh Circuit has not

---

[40] *Id.*
[41] *See* Promissory Note, Pl's Complaint, exh. A, dkt. 1.
[42] Pl's SOF ¶24, dkt. 44.
[43] *Reves,* 494 U.S. at 63.
[44] *Id.* at 66–67.
[45] *S.E.C. v. Thompson,* 732 F.3d 1151, 1160 (10th Cir. 2013)(*citing S.E.C. v. Wallenbrock,* 313 F.3d 532, 537 (9th Cir. 2002)).

yet evaluated the *Reves* factors and, therefore, has not commented on this issue. We, therefore, look to the Tenth Circuit, which has. There, courts have found that the individual factors of the "family resemblance" test have "'both factual and legal components.'"[46] Nonetheless, they have determined that in the context of civil suits, the ultimate determination of whether a note is a security is one for the court to make as a matter of law.[47] This is not to say that summary judgment is appropriate where genuine disputes of fact exist that tip the balance of the "family resemblance" factors. But resolution of factual disputes is necessary only in "rare instances" where a reviewing court is unable to assess the balancing of the factors without resolving a particular factual dispute.[48]

With this in mind, we now turn to the factor test. The first factor is the motivations prompting the parties to enter into the transaction. The note is likely to be a "security" if the seller's purpose is to raise money for the business, or to finance investments, and the buyer is primarily interested in the profit the note is expected to generate.[49] Indeed, plaintiff asserts she entered into the agreement for "investment purposes"[50] because she was looking to make a profit. Defendants' motivations in the transaction, however, were to "correct for its cash-flow difficulties," which under *Reves,* "'less sensibly describes a 'security.'"[51] We find defendants'

---

[46] *Thompson,* 732 F.3d at 1161.
[47] *Id.* (analyzing the issue and determining that authority in the tenth Circuit as well as the Supreme Court's decisions in this area require a finding to be made by the courts, noting that "both the Court's language in *Reves* and the complexity of the test it endorsed there—prescribing a rebuttable presumption, comparison of the subject instrument to a judicially crafted list of non-security instruments, and an inquiry into the existence and adequacy of alternate regulatory schemes—strongly suggest that, at least in the civil context, the ultimate conclusion that a "note" is a security is one for the court to make as a matter of law.").
[48] *Id.* (explaining that resolution of factual disputes is necessary only in "rare instances where the reviewing court is unable to make a proper balancing of the family-resemblance factors without resolving those factual disputes.").
[49] *Id* at 66.
[50] *See Meridian Software Funding, Inc. v. Pansophic Systems, Inc.,* No. 91 C 6055, 1992 WL 107310, *3 (May 14, 1992)(noting that entering into an agreement for "investment purposes" would weigh in favor of finding it to be a "security").
[51] *Id* (quoting *Reves,* 494 U.S. at 66); *see also Bass v. Janney Montgomery Scott, Inc.,* 210 F.3d 577, 585 (6th Cir. 2000)(finding the first factor a "washout" because the motivation on the one end was an effort to raise funds to launch a new enterprise, and the motivation for plaintiff was to make a profit).

motivations determinative of the transaction's character because they "reveal the underlying economic reality of the transaction at issue," which we are required to emphasize under the *Reves* analysis.[52] Further, defendants' motivation for the note was not to grow a reserve, or for growth of the company, as much as it was used to cover necessary costs to continue to do business.[53]

The second factor requires us to examine the plan of distribution of the instrument "to determine whether it is an instrument in which there is 'common trading for speculation or investment.'"[54] There is no allegation that there was common trading for speculation or investment purposes, nor is this type of transaction susceptible to common trading. It is more analogous to a transaction between two private parties engaging in a short-term commercial financing arrangement. Nor was the instrument "offered and sold to a broad segment of the public… ."[55] The transaction here was unique and solely between plaintiff and Layer Saver.[56] We find this factor weighs in favor of defendants.

The third factor focuses on "whether a reasonable member of the investing public would consider the disputed note an investment."[57] But there was no investing public involved in this transaction. Plaintiff argues this transaction was always represented to her as an investment opportunity but, admittedly, it was only offered to her and one other individual that Pierson

---

[52] *See Meridian Software Funding,* No. 91 C 6055, 1992 WL 107310 at *4 (finding the defendant's motivations were determinative of the transaction's character because they showed the underlying economic realities of the transaction).
[53] *See, e.g., Thompson,* 732 F.3d at 1162 (finding in favor of a security because the funds were used for growth of the company and to grow a reserve to fund a specific project, and noting that "sellers" of non-securities are ordinarily businesses motivated to correct cash-flow difficulties).
[54] *Reves,* 494 U.S. at 66 (quoting *S.E.C. v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 351 and 353 (1943)).
[55] *Id.* at 67.
[56] *See Conde v. SLS West, LLC,* No. 104CV1925JDTTAB, 2005 WL 1661747, *5 (S.D. Ind. July 15, 2005)(comparing two customers to the situation in *Reves* where notes were offered to tens of thousands of individuals)(citing *Bass,* 210 F.3d at 586); *but see Trust Co. of Louisiana v. N.N.P. Inc.,* 104 F.3d 1478, 1489 (5th Cir. 1997)(finding that a "debt instrument may be distributed to but one investor, yet still be a security.").
[57] *See Glazer v. Abercrombie & Kent, Inc.,* No. 07C2284, 2009 WL 3060269, *9 (N.D. Ill. Sept. 22, 2009)(*citing Reves,* 494 U.S. at 66).

recommended.[58] Citing the Sixth Circuit, defendants argue this factor is a "washout" because a bridge loan would typically not be a security.[59] (And plaintiff indeed called the transaction a "bridge loan to basically run the company").[60] There was also no advertisement by Layer Saver indicating its need for funds because Layer Saver never targeted the general public.[61] We find that this factor also weighs in favor of defendants, or at the very least is neutral.[62]

The fourth and final factor is risk reduction.[63] This factor is designed to assess whether alternative regulations, or measures, would render the protection afforded by the federal securities laws unnecessary.[64] As our sister court has concluded, an additional claim asserted under common law fraud "provide[s] plaintiffs with additional avenues of protection" and, therefore, "this factor weighs slightly in favor of defendants."[65] Arguably, however, state regulatory schemes do not suffice as "another regulatory scheme"[66] under the test in *Reves*. The parties do not mention this, nor has the Seventh Circuit had the opportunity to review the issue. Looking again to the Tenth Circuit, however, courts have found that state regulations, which generally apply to most business entities in some way or another, are "'not nearly enough to remove [a] company from the umbrella of the federal securities laws.'"[67]

---

[58] Kiolbasa Dep. Tr. 42, Defs' SOF, exh. 4, dkt. 39(testifying that Pierson indicated one additional person who was potentially interested in providing funding to Layer Saver, whom he spoke to once).
[59] *See Bass,* 210 F.3d at 585 (finding the third factor a "washout" because bridge loans are not normally securities).
[60] Defs.' SOF ¶17, dkt. 39.
[61] *Reves,* 494 U.S. at 68 (noting that the "fundamental essence of a 'security'" is its character as an investment, and the notes were advertised as investments, with no "countervailing factors" to lead a reasonable person to question that characterization).
[62] *See Meridian,* No. 91 C 6055, 1992 WL 107310 at *4(construing the third factor as "neutral" because there was no evidence of the investing public's expectations).
[63] *Reves,* 494 U.S. at 67.
[64] *Id.*
[65] *See Glazer,* No. 07C2284, 2009 WL 3060269 at 9; *but see Thompson,* 732 F.3d at 1169 (noting that if the instrument at issue "'would escape federal regulation entirely if the Acts were held not to apply,'" then this factor cuts towards characterizing it as a security, emphasizing federal regulation over state regulatory schemes).
[66] *Reves,* 494 U.S. at 67.
[67] *Thompson,* 732 F.3d at 1169(quoting *Wallenbrock,* 313 F.3d at 540).

But the other risk-reducing factor is the existence of collateral.[68] This note was secured by a pledge on the intellectual property for a shipping system owned by Kiolbasa.[69] Plaintiff's assertion is that this factor favors her position because the collateral does not provide her a sufficient remedy (because she must go through a UCC Article 9 sale to foreclose on Kiolbasa's patent rights). Regardless of the process she must take, however, she indeed has a remedy outside of the federal securities laws.

The balance of the *Reves* factors weighs more heavily in favor of this note being a non-security. Though plaintiff hoped to profit from the note (as would any individual or entity that loans funds), the plan of distribution was solely her, there was no investing public involved, and the risk reduction factor weighs more in favor of defendants. Because we find that the note was not a security as a matter of law, we grant defendants' motion as to Count IV.

**B. Supplemental Jurisdiction**

In addition to plaintiff's securities fraud claim, plaintiff also sued defendants under common law fraud. But before we can address that claim, we need to discuss the basis for the Court's jurisdiction. We have found the claim for federal securities fraud cannot stand because the note is not a "security" as defined by the Act. There remains a claim against Kiolbasa and Layer Saver for federal securities fraud (Count I), but the outcome would necessarily be the same for that count.

With neither of the federal claims remaining in the case, we must consider whether to exercise jurisdiction over the remaining state law claims. Plaintiff's additional claims fall within our jurisdiction if they are "'so related to [the federal] claims ... that they form part of the same

---

[68] *See Bass,* 210 F.3d at 585 (noting the existence of collateral as a significant risk-reducing factor).
[69] Defs' SOF, ¶24, dkt. 39.

case or controversy.'"[70] Indeed, plaintiff's state law claims arise out of the same set of facts – the loan to Layer Saver that did not get paid back – as the federal securities law claims. But it is also the "well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."[71] The Seventh Circuit has commented that district courts should explicitly state the reason "for taking the opposite course."[72]

There are three exceptions to the general rule that once federal claims are dismissed, the pendent claims should be left to the state courts.[73] As outlined by the Seventh Circuit, the first is whether the statute of limitations has run on the pendent claims. But Illinois law gives plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court to refile those claims in state court, so that is not an issue here.[74]

Second, we can retain jurisdiction over the state law claims when "'substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort.'"[75] Where state law claims are ripe, the applicable state law is straightforward, discovery has been completed and the case is "well over a year old," the Seventh Circuit has found that the district court could exercise supplement jurisdiction.[76] Here, these factors apply, there being no particularly new or complicated state law issues at play, the parties having completed discovery in June of last year, and having fully briefed two motions for summary judgment.

The third exception allows for supplemental jurisdiction when it is "abundantly clear" how

---

[70] *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 500 (7th Cir. 1999)(*quoting* 28 U.S.C. § 1367(a)).
[71] *Groce,* 193 F.3d at 501.
[72] *Id.*
[73] *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1251-52 (7th Cir. 1994).
[74] 735 ILCS 5/13–217; *see also Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir.2008).
[75] *Builders Bank v. First Bank and Trust Co. of Ill.,* No. 03 CV 04959, 2004 WL 2415053, *4 (N.D.Ill. Oct. 27, 2004)(*quoting Wright,* 29 F.3d at 1252) .
[76] *Timm v. Mead Corp.,* 32 F.3d 273, 277 (7th Cir. 1994).

the pendent claims should be decided, or if they are frivolous.[77] This exception would not apply, however, because we are not close to a point where we could decide the merits of all remaining claims.

Nonetheless, we are inclined to *sua sponte* grant the parties an opportunity to file simultaneous briefs explaining the basis for the exercise of federal jurisdiction over the remaining claims in this case, and to generally address the subject of continued federal jurisdiction.[78] We will then more appropriately be able to "make an informed exercise of [our] discretion to determine whether continued exercise of supplemental jurisdiction over the state law-only claims is the most prudent course."[79] The parties' briefs on the question of jurisdiction are due on or before April 10, 2015. Should the parties confer and determine that they agree to supplemental jurisdiction by this Court, the parties may instead submit a joint letter to the Court indicating their agreed position.

Defendants' motion for summary judgment as to Count IV is granted [dkt. 37]. We find that the note was not a security as a matter of law. The remainder of defendants' motion for summary judgment is denied without prejudice, with leave to reinstate should the jurisdictional question be resolved in favor of this Court retaining supplemental jurisdiction.

**ENTERED:**

**DATED:** <u>March 26, 2015</u>                    <u>/s/  Susan E. Cox        </u>
                                                  Susan E. Cox
                                                  United States Magistrate Judge

---

[77] *Wright,* 29 F.3d at 1252.
[78] *See, e.g., Williams Electronics Games, Inc. v. Garrity,* No. 97 C 3743, 2005 WL 2284280, *4 (N.D.Ill. Sept. 15, 2005)(doing same).
[79] *Id.*